In re COOPER/T. SMITH, et al.

Elizabeth Ross ABSHIRE, etc.,
Plaintiff–Appellant,

v.

GNOTS–RESERVE, INC., et al.,
Defendants–Appellees.

Sandra Marie CORMIER, etc., Plaintiff,

v.

AMERICAN COMMERCIAL LINES, et al., Defendants.

No. 90–3619
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 30, 1991.

---

Lawrence D. Wiedemann, John H. Denenea, Jr., Wiedemann & Wiedemann, New Orleans, La., for Abshire.

Glenn Gill Goodier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for American Commercial Lines.

George M. Legrand, David M. Flotte, Hebert, Mouledoux & Bland, New Orleans, La., for Cooper/T. Smith Stevedoring Co., Inc.

Henry S. Provosty, New Orleans, La., for Gnots–Reserve Inc.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

PER CURIAM:

Plaintiff, Elizabeth Abshire,[1] the widow of Donald Abshire, seeks review of the district court's grant of summary judgment in favor of defendants, Cooper/T. Smith and Gnots–Reserve claiming that a genuine issue of fact remains as to the cause of her husband's disappearance and subsequent drowning death. Having viewed the summary judgment evidence in the light most favorable to Mrs. Abshire, we agree with the district court that there is a complete absence of proof to establish unseaworthiness, causation or negligence on the part of any of the defendants. Therefore, we affirm the district court's grant of summary judgment to the defendants.

## I.

In September 1988, Cooper/T. Smith Stevedoring Company (Cooper), d/b/a Terrence Derrick & Lighterage Co., filed a complaint pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 183, *et seq.*, seeking exoneration from or limitation of liability for possible claims arising out of the disappearance and drowning death of Donald Abshire, a crane operator who was working aboard its vessel, the D/B KEVIN on the day he disappeared. Elizabeth Abshire filed a claim in the limitation action against Cooper claiming that Cooper was either negligent under the Jones Act or that the D/B KEVIN was unseaworthy. Mrs. Abshire also filed third party claims against American Commercial Barge Line (ACBL) and Gnots–Reserve Towing, Inc. (Gnots) claiming that both parties were negligent under general maritime law.

Cooper, Gnots and ACBL all filed motions for summary judgment, seeking dismissal of all claims asserted by Mrs. Abshire. Mrs. Abshire did not oppose the motion filed by ACBL and voluntarily dismissed that party from the suit.

The district court granted Cooper's and Gnots' motions for summary judgment and dismissed Mrs. Abshire's complaint with prejudice. Mrs. Abshire timely appeals.

## II.

Donald Abshire was employed by Cooper as a Jones Act seaman aboard the D/B KEVIN. Abshire's duties included operating an onboard crane, handling lines, securing barges, and assisting the movement of the barges in the flotilla. On February 19, 1988, the D/B KEVIN was discharging steel coils from the S/S PARASKEVI onto three river barges, the ACBL–2892, ACBL–1403 and ACBL–1323, which were moored to the port side of the D/B KEVIN in first-off, second-off and third-off positions respectively. As the barges were loaded, they were removed from the flotilla by the pushboat GNOTS I which was owned and operated by Gnots and piloted by Captain Andrew Sherman.

At about 4:00 p.m. on February 19, a co-worker, Darrel Gonsoulin, walked up to Abshire on the D/B KEVIN and talked to him for several minutes. Abshire told Gonsoulin that he was "going to catch a line" and proceeded to walk off the D/B KEVIN and across the head of the first-off barge, ACBL–2892. After having spoken with Abshire, Gonsoulin went to man the winch in preparation for movement of the first-off barge. The winch was motorized and the noise blocked out all other sounds. Another co-worker, Robert Smith, stated he last saw Abshire walking across the head of Barge ACBL–2892. No one saw or spoke to Abshire after that time.

At approximately the same time, the GNOTS I brought the barge ACBL–1323 alongside to be spotted in the third-off position next to the ACBL–1403. Once the ACBL–1323 was spotted, Captain Sherman moved the bow of the GNOTS I near the stern of the ACBL–2892 in preparation for removing the barge from its first-off position. Captain Sherman stated that as the GNOTS I moved into position, it neither bumped, hit nor jarred the ACBL–2892 while the barge was moored in the first-off position to the D/B KEVIN. In fact, the push knees of the GNOTS I never came in contact with the ACBL–2892 because of

---

1. A separate claim was filed by Abshire's first wife, Sandra Cormier, as mother of the sole surviving child of Donald Abshire. That claim was settled and is not subject to this appeal. Therefore, we address only the claims of Elizabeth Abshire.

accumulated driftwood around the stern of the barge. Captain Sherman stated that no problems were created by facing up the GNOTS I to the barge with the debris between its nose and the stern of the barge. Once the pushboat was faced up to the barge and all Cooper personnel had disembarked, Captain Sherman began to back the barge out of position. At all times pertinent, Captain Sherman had full view of the deck of the ACBL–2892 and never saw anyone slip and fall, including Abshire, whom he stated he knew on sight.

According to the Cooper workers who last saw Abshire, he was last seen walking across the ACBL–2892 prior to the time that the GNOTS I began to move the barge out of position. It was not until that barge began to move that Gonsoulin and Smith realized that Abshire was missing. Gonsoulin jumped aboard the ACBL–2892 to search for Abshire. He also searched barges ACBL–1403 and 1323. Gonsoulin then walked back across ACBL–2892, which had stopped moving once Captain Sherman realized men were aboard the barge. Once Gonsoulin had disembarked the ACBL–2892, Captain Sherman resumed backing the vessel out of position, apparently unaware that Abshire was missing.

After Abshire's absence was noticed, an immediate search of the area was undertaken by Cooper personnel and others, including the United States Coast Guard. Abshire was not found in or on any of the vessels or in the water. The persons who searched the vessels and walked across the barges found no condition that would indicate that Abshire might have slipped or fallen into the water.

Abshire's body was recovered in the Mississippi River some four months later. When found, his body did not have on a life preserver. Abshire's cause of death was asphyxia by drowning. The Coast Guard investigated the incident and reported that there was no evidence of culpability for the accident. Even now, no one knows what happened to Abshire on the date he disappeared.

### III.

The district court granted summary judgment in favor of the defendants stating that summary judgment was proper because the plaintiff produced no proof of the causation against either Cooper or Gnots. On appeal, Mrs. Abshire argues that the facts, if viewed in the light most favorable to her, indicate a causal relationship between the movements of the barge and the drowning of Abshire. Mrs. Abshire contends that because the standard of proof is so low in Jones Act cases and there is a reasonable inference that the negligence of Cooper or Gnots or both caused her husband's death, summary judgment was improper.

### Scope of Review

This court reviews the grant of summary judgment motion *de novo*, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

### Jones Act and Maritime Negligence

The burden to prove causation in a Jones Act case is "very light" or "featherweight." *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir.1975). Under the Jones Act, a defendant must bear the re-

sponsibility for any negligence, however slight, that played a part in producing the plaintiff's injury. *See Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 302 (5th Cir.1984). Although in Jones Act cases a "jury is entitled to make permissible inferences from unexplained events," summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case. *See Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir. 1987).

■ The standard for negligence under general maritime law is higher. The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury. *See Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir.1985). Furthermore, the resultant harm must be reasonably foreseeable. *Daigle v. Point Landing, Inc.,* 616 F.2d 825, 827 (5th Cir.1980).

### Maritime Negligence Claims Against Gnots

■ Mrs. Abshire argues that the movements of the GNOTS I when facing up to and attempting to remove the debris from in front of the pushboat, without notice or warning to the employees in the area, creates a reasonable inference that the GNOTS I bumped or jolted the ACBL–2892 as Abshire was preparing the barge for movement, thereby causing his fall. The undisputed evidence however reveals that the GNOTS I never came in contact with barge ACBL–2892, nor were any maneuvers aimed at removing the debris between the vessels begun until after the barge was moved away from the D/B KEVIN. As noted above, the Captain of the GNOTS I testified that during the entire time he was maneuvering his vessel to remove barge ACBL–2892 from its first off position, he had full view of the barge and never saw Abshire. In the face of this evidence, Mrs. Abshire presented no evidence that Abshire was even on barge ACBL–2892 when the GNOTS I was maneuvering into position,

or that Abshire was on that barge when he fell. There is thus no evidence whatsoever to raise an inference, much less to show, that operation of the GNOTS I negligently caused Abshire's fall. Therefore, summary judgment in favor of Gnots was proper.

### Jones Act Negligence and Unseaworthiness Claims Against Cooper

■ For Mrs. Abshire to prevail on her claims that the D/B KEVIN was unseaworthy, she must show that the vessel breached its warranty of seaworthiness, and that the resulting injury was caused by that unseaworthy condition. *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1354 (5th Cir.1988). As the district court properly noted, it is undisputed that Abshire did not go into the water from the D/B KEVIN. All of the witnesses agree that Abshire was last seen walking *away* from the D/B KEVIN across the bow of the ACBL–2892. As Abshire could not have fallen from the D/B KEVIN, there is no basis in fact for Mrs. Abshire's claim that an unseaworthy condition existed on the D/B KEVIN causing her husband to fall.

■ Mrs. Abshire argued to the district court that, because her husband's body was found without a life vest, a material issue of fact existed pertaining to whether rules and regulations regarding life preservers were adequate aboard the D/B KEVIN, particularly because the workers are allowed to wear their own vests instead of the company-issue models. Alternatively, Mrs. Abshire argued, the life vests issued by Cooper were defective. Whether she was arguing that such conditions rendered the D/B KEVIN unseaworthy, *see Vargas v. McNamara,* 608 F.2d 15, 18 (1st Cir. 1979) (unseaworthiness can be manifested by an unsafe method of work, such as the failure by the shipowner to provide adequate equipment), or was claiming such deficiency or defect amounted to Jones Act negligence is irrelevant; neither contention raises a material issue of fact.

The record reveals that Cooper had a company policy requiring all employees to use United States Coast Guard approved

life vests when working. As long as the life jacket was Coast Guard approved, a worker could wear a jacket which either he or the company provided. Furthermore, the undisputed testimony reveals that on the day Abshire disappeared, he had been wearing a Coast Guard approved life vest but had voluntarily taken it off around 1:00 p.m. None of the witnesses could recall if he had redonned the vest prior to his disappearance.

Mrs. Abshire presented no evidence that the life jacket worn by her husband on that day or the life vests provided by Cooper were defective in any way. The undisputed testimony reveals that Cooper's life vest policy was adequate to safeguard its workers. Therefore, Mrs. Abshire's claims that Cooper's life vest policy was inadequate or that the vests were defective are not supported by the evidence, and thus raise no genuine issue of fact. As there is no evidence, circumstantial or otherwise, to establish that the D/B KEVIN was unseaworthy, or that Cooper acted negligently or in any way caused Abshire's death, there is a complete absence of proof of these essential elements. Therefore, summary judgment was proper.

Mrs. Abshire raised no other theory in the district court to support her claims for Jones Act negligence. On appeal, she argues for the first time that Cooper had the duty to supervise Gnots in its movement of the ACBL vessels. As this argument was never raised in the district court it cannot be raised for the first time on appeal. *See Capps v. Humble Oil & Ref., Co.*, 536 F.2d 80, 82 (5th Cir.1976); *Coleman v. Associated Pipeline Contractors, Inc.*, 444 F.2d 737, 740 (5th Cir.1971). Therefore, we shall not consider any arguments based on Mrs. Abshire's theory of liability through failure to supervise.

## CONCLUSION

In an attempt to convince this court that summary judgment is improper in "missing seamen" cases, Mrs. Abshire argues that "speculation, conjecture and possibilities suffice to support a jury verdict." *Landry*, 511 F.2d at 143 n. 2 (Gee, J. concur-

ring). Thus she posits, as there is no direct evidence to contradict her theories of how her husband died, a jury should be allowed to determine the facts. She cites several missing seamen cases to support this proposition. *See, e.g., Butler v. Whiteman*, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958); *Landry*, 511 F.2d 138; *Admiral Towing Co. v. Woolen*, 290 F.2d 641 (9th Cir.1961); *Gaymon v. Quinn Menhaden Fisheries of Texas, Inc.*, 118 So.2d 42 (Fla.App.1960). But each cited case is factually distinguishable from the instant case; in each, the jury's "speculation or conjecture" was based on direct or strong circumstantial evidence to support a reasonable inference that the vessel was negligent or unseaworthy. As we stated in *Martin,* when the causal link between the alleged negligence and the decedent's death is too speculative to draw a reasonable inference that the negligence played a part in the seaman's disappearance, summary judgment is appropriate. *See Martin,* 819 F.2d at 550. No evidence, either direct or circumstantial, exists in the instant case to show that either Cooper or Gnots were in any way responsible for Abshire's drowning. All we are given are unsupported suppositions which are inadequate to overcome summary judgment despite the Jones Act's featherweight burden of proof.

For the foregoing reasons, the judgment of the district court is AFFIRMED.