Willie Lee GRACE, Jr.

v.

KEYSTONE SHIPPING COMPANY.

No. 1: 91 CV 964.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 19, 1992.

Theodore R. Johns, Jr., Beaumont, Tex., for plaintiff.

Alan G. Sampson, Benckenstein Oxford & Radford, Beaumont, Tex., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR KEYSTONE SHIPPING COMPANY

SCHELL, District Judge.

CAME ON TO BE CONSIDERED Defendant's Motion for Summary Judgment and the court's Notice of Intent to Consider Additional Grounds for Summary Judgment in Favor of Keystone Shipping, and the court, after reviewing the Motion, the Notice, the responses in opposition, the pleadings of record, and all attached exhibits is of the opinion that summary judgment should be GRANTED for Defendant Keystone Shipping Company.

## I. BACKGROUND

### A. Facts

The Plaintiff, Willie Lee Grace, Jr. ("Grace"), filed suit against Keystone Shipping Company ("Keystone"), Shipco 669, Inc., and Connecticut National Bank under the Jones Act, 46 U.S.C.App. § 688, and under general maritime law. The plaintiff voluntarily dismissed his claims against Shipco 669, Inc., and Connecticut National Bank, leaving Keystone as the remaining defendant.

Grace's claims against Keystone arise out of an incident on January 6–7, 1989, aboard the S/S KENAI, a ship operated by Keystone. The S/S KENAI was returning from Panama en route to Texas City, Texas laden with crude oil. On January 6, 1989, ship Captain Charles Ebersole and Chief Mate Mark Sizemore conducted a pre-arrival search for contraband. Upon discovering a plastic baggie containing a green leafy substance in Grace's stateroom, the captain placed an entry in the ship's Official Log charging Grace with possession of marijuana. On January 7, the U.S. Coast Guard boarded the S/S KENAI with U.S. Customs and search dogs. The Coast Guard conducted a test on the green leafy substance and the substance tested positive as marijuana.

Subsequently, the Coast Guard initiated proceedings to revoke Grace's seaman's document in a Coast Guard administrative proceeding pursuant to 46 U.S.C. § 7703 and 46 C.F.R. Part 5. Grace was charged with possession of a controlled substance while serving under the authority of his seaman's document. Also charged in the same proceeding was Ruby Payten. Grace's attorney objected to the joinder of Grace and Payten as unduly prejudicial to Grace because Payten had previously been convicted of marijuana possession. The objection was overruled. Both Payten and Grace denied the charge of misconduct. See, U.S. Coast Guard Hearing of Willie Lee Grace and Ruby Payten, (March 20, 1989), (attached as Exhibit "G" to Key-

stone's Further Support for Summary Judgment).

In accord with 46 C.F.R. Part 5, Grace was afforded the near equivalent of a civil trial in front of an Administrative Law Judge. Grace was represented by counsel, given the opportunity to subpoena, present, and cross-examine witnesses, and given the right to testify or remain silent. Grace's defense to the charge of possession was that any marijuana found in his stateroom was not his, nor did he have any knowledge of it. At the conclusion of the administrative hearing, the Administrative Law Judge found by a preponderance of the evidence that the marijuana found in Grace's stateroom was possessed by him.

Having found that Grace possessed contraband, the Administrative Law Judge automatically revoked Grace's seaman's document. Section 5.61 of 46 C.F.R. makes revocation mandatory when a charge of "wrongful possession" of "dangerous drugs" is proven by a preponderance of the evidence, except when a respondent in a revocation hearing involving marijuana can establish that any use was merely experimentation. Because Grace denied any ownership or knowledge over the marijuana found in his locked briefcase in his stateroom, he did not raise this defense and revocation was mandatory.

Grace appealed the Administrative Law Judge's decision of October 17, 1989. The Administrative Law Judge's decision was affirmed. *Commandant Appeal Decision 2504 (Grace)*, August 20, 1990. Grace's further appeal to the National Transportation Safety Board was dismissed as untimely. *Commandant v. Grace, N.T.S.B. Order No. ME–144.* The Fifth Circuit affirmed the dismissal. *Grace v. National Transp. Safety Bd.*, 966 F.2d 1447 (5th Cir. 1992).

### B. Grace's Jones Act and General Maritime Claims

Section V of *Plaintiff's First Amended Original Complaint* alleges:

On or about the 7th day of January, 1989, Plaintiff was employed as a seaman aboard the vessel "SS KENAI" official number 586127. That on that date the Master of said ship caused the Coast Guard to place a charge of misconduct against Plaintiff and as a result of the actions of the Master, Plaintiff sustained severe and painful injuries to his body. Such action and injuries occurred as proximate result of the unsafe and unseaworthy condition of the "SS KENAI" and its appurtenances and/or equipment, or in whole or in part as a proximate result of the negligence and lack of attention on the part of the Defendant–Employer, its agents, servants and/or employers [sic], acting in the course and scope of their employment or agency.

In answers to interrogatories propounded by Keystone as to injury or illness, Grace responded that he "suffered injury to his stomach, nervous system, and chest resulting in physical pain and mental anguish. The injuries were caused by the trauma of being charged due to the unseaworthiness of the vessel due to the making-up [sic] of the crew." (answer to interrogatory number 18, dated May 11, 1992). In response to interrogatory 19 concerning unseaworthiness and negligence, Grace responded:

The vessel was unsafe and unseaworthy on the occasion in question because the crew contained a person or persons that had been convicted of the possession of controlled substances and jeopardized Plaintiff as a seaman. That some members of the crew were in use of alcoholic beverages aboard the vessel, making the vessel unsafe and the make-up of the crew was a proximate cause of injuries to the Plaintiff. (May 11, 1992 answer to interrogatories).

### C. Keystone's Motion for Summary Judgment and the Court's Sua Sponte Notice to Consider Additional Grounds

Keystone filed its motion for summary judgment on the basis that the plaintiff had failed to present any evidence linking Keystone to any wrongdoing, negligence, or unseaworthiness, and the plaintiff had also failed to present any evidence that any alleged wrongdoing or unseaworthiness

was a proximate or producing cause of the plaintiff's injuries. The court sua sponte tendered to the parties its intention to consider two additional bases for summary judgment: 1) the Administrative Law Judge's finding that Grace knowingly possessed marijuana collaterally estops Grace from further contesting that fact, thereby precluding any liability on the part of Keystone, since Grace's liability contentions necessarily hinge on his claim that the marijuana was not his but was surreptitiously planted in his briefcase inside his stateroom by other crew members; and 2) no recovery under the Jones Act or under general maritime law is possible for purely emotional injuries in the absence of physical contact or the threat of physical contact.

## II. DECISION

### A. Standards for Summary Judgment

Rule 56(c), Fed.R.Civ.P., permits a district court to grant a summary judgment sua sponte. *Arkwright–Boston Mfrs. Mutual Ins. Co v. Aries Marine Corp.,* 932 F.2d 442, 445 (5th Cir.1991). Summary judgment is required when there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party, or in this case the party in whose favor summary judgment on sua sponte notice can be granted, may discharge its burden by showing to the court that there is an absence of evidence on an essential element of the nonmovant's case, and on which the nonmovant will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this situation, "... there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* 477 U.S. at 323, 106 S.Ct. at 2552–53. When summary judgment is

sought on this basis, it is the nonmoving party's burden to submit sufficient probative "evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. All evidence of the nonmovant is to be believed, and all reasonable inferences are to be drawn in the nonmovant's favor. *Id.* 477 U.S. at 254–57, 106 S.Ct. at 2513–14.

### B. Collateral Estoppel Entitles Keystone to Summary Judgment

#### 1. Grace's Two Theories of Liability?

Based on Grace's pleadings, answers to the Defendant's interrogatories, and Grace's response to Keystone's Motion For Summary Judgment Or Abatement, it appears that he bases his liability contentions on possibly two theories. First, the unseaworthy or unsafe condition of the S/S KENAI crew caused someone else's marijuana to turn up in his stateroom. In other words, the drug using propensities of one or more crew members, possibly Ruby Payten, led to a false charge to be placed against Grace. Second, Grace is apparently now alleging that general drunkenness and drug use among the crew led to the search of his stateroom, somehow creating a fact issue on negligence and proximate cause, even if the marijuana was in fact Grace's.

#### 2. Collateral Estoppel based upon the Coast Guard Proceeding

■ In the Fifth Circuit, collateral estoppel bars relitigation of issues if: 1) the issue at stake is identical to the one involved in the prior litigation; 2) the issue was actually litigated; and 3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. *Matter of Lewisville Properties, Inc.,* 849 F.2d 946, 949 (5th Cir.1988).

■ The Supreme Court has "long favored" the application of collateral estoppel to determinations of administrative bodies acting in a judicial capacity that have achieved finality. *Astoria Fed. Sav. &*

*Loan Ass'n v. Solomino,* — U.S. —, —, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In *Utah Construction,* the Supreme Court upheld the use of preclusion "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate...." 384 U.S. at 422, 86 S.Ct. at 1560. The Fifth Circuit has applied the *Utah Construction* test to preclude relitigation. *See, e.g., Castillo v. Railroad Retirement Bd.,* 725 F.2d 1012, 1014 (5th Cir.1984) (prior administrative determination that employee was not disabled precluded relitigation in subsequent proceeding); *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081, 1084 (5th Cir.1969) (N.L.R.B. finding that union had engaged in an unfair labor practice was entitled to preclusive effect in a subsequent lawsuit). "The policy considerations which underlie res judicata—finality to litigation, prevention of needless litigation, avoidance of unnecessary burdens of time and expense— are as relevant to the administrative process as to the judicial." *Id.* at 1084.

The Coast Guard administrative hearing Grace received satisfies the *Utah Construction* test. The administrative hearing was judicial because its very purpose was to resolve the fact question of whether the marijuana found in his stateroom was wrongfully possessed by Grace. *See* 46 C.F.R. Part 5 (describing hearing procedure). The issue of whether the marijuana was Grace's was properly before the Administrative Law Judge because the Coast Guard has jurisdiction pursuant to 46 U.S.C. § 7703. The Administrative Law Judge resolved the disputed issues of fact and found by a preponderance of the evidence that Grace wrongfully possessed marijuana. Grace had an adequate opportunity to litigate the issue of wrongful possession in the administrative hearing. Grace was represented by counsel, was given the opportunity to call and cross-examine witnesses, was given the opportunity to make opening and closing statements, and

was entitled to and did receive ultimate findings of fact and conclusions of law on the record. Furthermore, Grace was entitled to appeal the administrative decision, which he did. With such an elaborate procedure, it is no surprise that other federal district courts have applied collateral estoppel to issues previously decided by Coast Guard document revocation proceedings under 46 C.F.R. Part 5 and 46 U.S.C. § 7703. *See, e.g., Wentworth v. Cole,* 1990 A.M.C. 253, 1989 WL 208287 (D.Haw.1990) (permitting plaintiffs to collaterally estop defendants from contesting negligence where Coast Guard revocation proceeding found defendants negligent).

Grace will be collaterally estopped if the fact issue adjudicated in the administrative hearing satisfies the three-part test of *Lewisville.* First, the precise issue of which Keystone seeks to preclude relitigation is the issue of Grace's marijuana possession, and is therefore identical. The only arguable variance between the administrative hearing and this lawsuit concerns whether the Administrative Law Judge found that the marijuana was "knowingly possessed" by Grace, or merely "possessed," without knowledge. Although the Administrative Law Judge did not use the exact words "knowingly possessed," it is abundantly clear from the Administrative Law Judge's decision and order that his use of the word "possession" included "knowingly." In normal and customary legal usage, "possession" includes knowledge of control. *See* BLACK'S LAW DICTIONARY 1047 (5th ed. 1979). The Administrative Law Judge's opinion reflects that Grace "denied knowledge or ownership" of the marijuana found in his stateroom and the record of the hearing reflects that Grace testified that he did not have knowledge of the substance. If the Administrative Law Judge understood that the charge of possession did not include a requirement of knowledge, then the Administrative Law Judge would not have given any consideration to Grace's contentions that he had no knowledge of the substance. At the very least, he would have stated that knowledge was not a necessary element of possession.

Instead, the Administrative Law Judge undertook to enunciate the facts that tended to prove that Grace had the means and the opportunity to purchase the marijuana while in Panama.

Furthermore, Grace was charged with and found liable for "misconduct" and his document was suspended for "wrongful possession" of dangerous drugs. There is no reported decision which even indirectly suggests that a seaman's document can be suspended or revoked for "unknowing" possession of a controlled substance. The terms "misconduct" and "wrongful" necessarily connote knowledge of wrongdoing. Consequently, when the Administrative Law Judge used "possession" of marijuana as a basis to find "misconduct" and "wrongful possession", he defined "possession" as "knowing possession."

Second, *Lewisville* requires that the issue must have been actually litigated. The issue of Grace's marijuana possession was the only issue litigated in the Coast Guard hearing.

Finally, the issue resolved in the administrative hearing must have been essential to the judgment. The Administrative Law Judge revoked Grace's seaman's document and could not have done so without first finding the charge of misconduct to be true. Furthermore, Grace's document was revoked pursuant to 46 C.F.R. § 5.59, which is only applicable when the Administrative Law Judge finds proven a charge of misconduct for "wrongful" possession or use of drugs. Thus, the judgment in the administrative hearing necessarily turned on the fact issue of marijuana possession.

### 3. A Collateral Attack on Collateral Estoppel?

Grace argues that collateral estoppel is not applicable because the joining of Ruby Payten as a co-respondent in the administrative hearing was procedurally incorrect and so highly prejudicial as to render the hearing unfair to Grace. Grace raised this issue in his appeal of the Administrative Law Judge's decision. The U.S. Coast Guard Commandant found no prejudicial error and found that the record with respect to the co-respondent was individualized and adequate to support the findings. Even if the joinder of Payten constituted some sort of irregularity, Grace's remedy was to timely appeal the decision of the Commandant affirming the Administrative Law Judge. Of course, if the prior administrative hearing denied Grace "the full and fair opportunity" to litigate the claim or issue, then preclusion is improper. *Griffen v. Big Spring Indep. School Dist,* 706 F.2d 645, 654 (5th Cir.1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 525, 78 L.Ed.2d 709 (1984). The procedure in the Coast Guard administrative hearing was not so fundamentally unfair that it denied Grace the opportunity to fully and fairly litigate the issue of whether Ruby Payten was improperly joined. Erroneous final judgments, even if based upon subsequently overruled legal principles, are entitled to preclusive effect. *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 399, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). To open a voidable, but not void, final judgment to collateral attack on the basis of some procedural error in the proceedings would render the doctrines of collateral estoppel and res judicata meaningless, since the very purpose of those doctrines is to avoid relitigation. *Id.*

This court concludes that the doctrine of collateral estoppel precludes Grace from relitigating the issue of whether he "knowingly possessed" the marijuana found in his stateroom. Therefore, as a matter of law, the marijuana was Grace's.

### 4. Grace's Possession of Marijuana and the Viability of His Jones Act and General Maritime Claims

Grace's first theory is that the unseaworthy and unsafe make-up of the crew led to the clandestine placement of marijuana in Grace's stateroom by other crew members. Grace's affidavit and deposition testimony denying ownership or knowledge of the marijuana, *see Opposing Affidavit of Willie Lee Grace, Jr.,* and *Deposition of Willie Lee Grace, Jr.,* pages 66–68, (attached as exhibits "D" and "E" to the Plaintiff's Response to Motion for Summary Judgment or Abatement), coupled with his affi-

davit and deposition testimony that Ruby Payten had a key to his locked stateroom, *see Grace Affidavit, Grace Deposition,* pages 114–116, plus his affidavit testimony of rampant drug and alcohol use among the crew, *see Grace Affidavit,* might well support an inference that the unseaworthy nature of the crew led to a false charge of marijuana possession. However, the Administrative Law Judge's finding that Grace possessed the marijuana precludes Grace from contesting that fact in this forum, and Grace cannot prevail as a matter of law on this theory of liability.

■ Grace's second theory of liability seems to be that the general unseaworthy nature of the crew led to the discovery of the marijuana in Grace's stateroom. Grace argues that even if the marijuana was his, that fact is only evidence of contributory negligence and cannot preclude Keystone's liability completely. *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1355 (5th Cir.) (pure comparative negligence governs Jones Act and unseaworthiness claims), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Nevertheless, Grace must still establish either that Keystone's negligence or the unseaworthy condition of the ship proximately caused his injuries in the first place. *In re Cooper/T. Smith,* 929 F.2d 1073, 1076–77 (5th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 190, 116 L.Ed.2d 151 (1992).

■ To establish proximate cause in an unseaworthiness claim, the plaintiff must prove that the unseaworthy condition played a substantial part in bringing about the injury and that the injury was a direct result or a reasonably probable consequence of the unseaworthiness. *Johnson,* 845 F.2d at 1354. Compared to unseaworthiness, the Jones Act burden to prove causation is "very light" or "featherweight." *Landry v. Two R. Drilling Co.,* 511 F.2d 138, 142 (5th Cir.1975). Nevertheless, summary judgment in a Jones Act case is proper when there is a complete absence of proof on any essential element of the non-moving party's case, including proximate cause. *In re Cooper/T. Smith,* 929 F.2d at 1077.

Assuming that the Jones Act or the general maritime law actually permits a seaman to knowingly possess marijuana and yet maintain an action against his employer for damages when it is discovered, Grace has no evidence to support his contention that the unseaworthy or unsafe nature of the crew was even a "featherweight" proximate cause of his injuries. All the evidence before the court shows that the search of Grace's stateroom was conducted pursuant to a routine pre-arrival search for contraband. Nothing offered by Grace shows any causal connection between the allegedly unsafe nature of the crew and the discovery of marijuana in Grace's stateroom.

Grace relies on Captain Ebersole's testimony at the revocation hearing to show causation. Captain Ebersole's testimony at Grace's revocation hearing does not demonstrate how the allegedly unseaworthy crew led to the discovery of the marijuana. His testimony at the revocation hearing was that the Coast Guard search dogs were alerted in Ruby Payten's room on January 7, 1989, but that he did not witness the event. *U.S. Coast Guard Hearing of Willie Lee Grace and Ruby Payten,* March 20, 1989, 41–42, (attached as Exhibit "F" to the Plaintiff's Response to the Court's Notice to Consider Additional Grounds for Summary Judgment).

■ Normally, Captain Ebersole's lack of personal knowledge would render his statement incompetent under Federal Rule of Evidence 602. Lack of personal knowledge would make Ebersole's statement unusable by Grace because summary judgment evidence must be such that it can be produced in admissible form at trial. *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir.1990). However, it appears that Captain Ebersole's statement at the document revocation hearing was made while he was still an agent or servant of the defendant and it does concern a matter within the scope of his employment or agency. Therefore, it is an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D), and no personal knowledge is required. *Mahlandt v. Wild Canid*

*Survival & Research Ctr., Inc.,* 588 F.2d 626, 630–31 (8th Cir.1978).

Even with Ebersole's statement, however, there is no evidence of a causal connection between the allegedly unseaworthy crew and the discovery of marijuana in Grace's stateroom. The dog search with U.S. Customs took place after Customs boarded on January 7, 1989. The undisputed evidence shows that the search of Grace's stateroom took place on January 6, 1989, a full day *before* the search dogs were alerted to Ruby Payten. Furthermore, nothing links the discovery of Payten's marijuana to the discovery of Grace's, or in the alternative, demonstrates how Grace would have avoided discovery had the search dogs not been alerted by Payten's possession. Despite the "featherweight" burden of causation in a Jones Act case, mere speculation or conjecture is insufficient to overcome summary judgment. *In re Cooper/T. Smith,* 929 F.2d at 1078. Grace's conclusory allegations in his answers to the Keystone's interrogatories that the unsafe condition of the crew proximately caused his injuries are insufficient. *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.,* 922 F.2d 220, 225 (5th Cir.1991) (unsupported affidavits that set forth ultimate or conclusory facts are insufficient to defeat a motion for summary judgment).

C. Grace's Injuries do not Support Recovery under the Jones Act or the General Maritime Law

1. *No Unseaworthiness Claim for Mental Anguish*

■ Keystone is also entitled to summary judgment on the basis that Grace's injuries are not compensable under either general maritime law or the Jones Act. As to Grace's unseaworthiness claim, the rule in the Fifth Circuit is that:

the ancient right to recover for unseaworthiness is limited to recovery of "loss of earnings, past and prospective, ... medical expenses ..." and also an additional sum on account of his physical injuries and for pain and suffering.

*Gaston v. Flowers Transp. Co.,* 866 F.2d 816, 820–21 (5th Cir.1989) (citing *Sosa v. M/V Lago Izabal,* 736 F.2d 1028, 1034 (5th Cir.1984)). It is also the established rule of this court. *Kiffe v. Neches–Gulf Marine, Inc.,* 709 F.Supp. 743, 745 (E.D.Tex.1989) (Schell, J.). Grace presents no cognizable claim under general maritime law.

2. *No Jones Act Recovery without the Threat of Physical Contact*

■ The rule in the Fifth Circuit for recovery of purely emotional injuries under the Jones Act was recently reemphasized in *Plaisance v. Texaco, Inc.,* 966 F.2d 166 (5th Cir.1992) (en banc). In *Plaisance,* the en banc majority rejected the panel's holding that purely emotional injuries were recoverable when "a reasonable person, normally constituted, would not be able to cope adequately with the mental distress occasioned by the circumstances." *Id.* at 168 (citing *Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1010 (5th Cir.1991)). The en banc court emphasized that the Fifth Circuit rule remained the one announced in *Gaston v. Flowers Transp.,* 866 F.2d 816 (5th Cir. 1989). *Plaisance,* 966 F.2d at 169.

*Gaston* denied recovery for purely emotional injury from witnessing harm to another in the absence of physical contact. 866 F.2d at 821. The en banc court in *Plaisance* interpreted *Gaston* as leaving open the question of whether recovery was permitted under a "zone of danger" theory, but rejecting all less exacting standards of recovery for purely emotional injuries. *Plaisance,* 966 F.2d at 169.

■ The "zone of danger" theory permits recovery for purely emotional injuries absent any physical contact, which result "from the witnessing of peril or harm to another if the plaintiff is also threatened with physical harm as a consequence of the defendant's negligence." *Plaisance,* 966 F.2d at 168. The Fifth Circuit has not adopted this theory of recovery. *Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (5th Cir.1992). Even if it did, Grace cannot recover under it. The "zone of danger" theory requires the threat of physical harm or contact. *Id.* Grace argues that he was confronted with search dogs, and

those dogs produced fear on his part. The only evidence of Grace's contact with search dogs is in his deposition where he states: "They [the Coast Guard] came in with some dogs and they went through all my baggage and stuff." *Deposition of Willie Lee Grace, Jr.,* lines 20–21, page 61, (attached as Exhibit "A" to Plaintiff's Response to Motion for Summary Judgment or Abatement). There is no showing that Grace was ever threatened with physical contact or harm.

### 3. No Purely Emotional Recovery Even with Intentional Tortious Conduct

 Grace arguably could distinguish *Gaston* and *Plaisance* by arguing that neither dealt with employer negligence which results in intentional tortious conduct directly aimed at harassing the plaintiff. *Gaston* recognized that the Ninth Circuit permitted recovery for emotional damage resulting from a campaign of harassment directed at the plaintiff. 866 F.2d at 821 (citing *Taylor v. Burlington Northern R.R. Co.,* 787 F.2d 1309, 1312–13 (9th Cir. 1986). Other circuits have rejected purely emotional recovery for intentionally tortious conduct aimed at the plaintiff. *See, e.g., Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95, 96 (7th Cir.1988) (claim that employer had harassed plaintiff with unwarranted disciplinary charges and deliberately inflicted emotional distress was not actionable under F.E.L.A), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989); *Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340, 341 (6th Cir.) (deliberate and premeditated tortious conduct not actionable under F.E.L.A in the absence of physical contact), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987).

Given these authorities and the *Plaisance* court's interpretation of *Gaston*, it is highly unlikely that the Fifth Circuit would permit recovery for purely emotional injuries resulting from even intentional tortious conduct. Even if the Fifth Circuit did carve out an exception to *Gaston* for intentional conduct aimed at the plaintiff, Grace would still not be able to recover. In order

for Grace to make out a case that he was the target of intentional tortious conduct, he would have to establish that someone intentionally created conditions that led to his injuries. The only possible scenario for intentional conduct resulting from an unseaworthy crew is that Keystone's negligence caused someone to plant the marijuana with the intent that it would be discovered in Grace's possession. Grace is collaterally estopped from contesting that the marijuana was his. Keystone is therefore entitled to summary judgment.

IT IS, therefore, ORDERED that Summary Judgment is GRANTED for Defendant Keystone for the reasons set forth in this memorandum opinion and order.