# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30126

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2019

Lyle W. Cayce
Clerk

ROBERT SCHINDLER,

  Plaintiff - Appellant

v.

DRAVO BASIC MATERIALS COMPANY, INCORPORATED,

  Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-13013

Before STEWART, CLEMENT, and HO, Circuit Judges.

PER CURIAM:*

In this asbestos-exposure case, the district court excluded the testimony of plaintiff's two expert witnesses on specific causation. With no admissible evidence on this element of plaintiff's claim, the court then granted defendant's motion for summary judgment. Because we conclude that the district court did not err in either respect, we AFFIRM its judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30126

I

Plaintiff Robert Schindler worked on various vessels during his long career as a merchant marine. In 2016, he was diagnosed with mesothelioma. He sued 42 defendants in California state court, alleging that they caused his mesothelioma by exposing him to asbestos. One defendant, Dravo Basic Materials Co., challenged the California court's personal jurisdiction, and Schindler voluntarily dismissed Dravo from that case. The remaining California defendants later settled with Schindler.

Schindler then filed this Jones Act personal-injury suit against Dravo in the Eastern District of Louisiana. Schindler alleges that he was exposed to asbestos during the approximately six weeks in 1973 when he worked for Dravo in the engine room of the "Avocet," a dredge that collected clam shells from the bottom of Lake Pontchartrain. Dravo, however, denies that there was asbestos on the Avocet—a difficult fact to verify now that the dredge sits at the bottom of the ocean. Dravo had no use for the Avocet once clam-shell dredging on Lake Pontchartrain was prohibited, so Dravo scuttled the dredge in 1991 to create an artificial reef off the Florida coast. Nearly 30 years later, Dravo no longer has any records relating to the Avocet.

During discovery, Schindler submitted reports from medical experts Dr. Robert Harrison and Dr. David Tarin. He anticipated that they would testify that exposure to asbestos can cause mesothelioma—"general causation"—and that exposure to asbestos on the Avocet was one cause of Schindler's disease—"specific causation." After Harrison and Tarin's depositions, Dravo filed *Daubert* motions to exclude their testimony. Dravo also moved for summary judgment, arguing that Schindler could not prove causation with the expert testimony excluded.

The district court granted Dravo's *Daubert* motions in part and excluded Harrison and Tarin's specific-causation testimony. The court held that their

No. 19-30126

testimony was not reliable because, among other reasons, their opinions were not "based on sufficient facts or data" regarding whether and to what degree Schindler was exposed to asbestos on the Avocet. *See* Fed R. Evid. 702(b). With no admissible expert testimony in the record to prove specific causation, the court granted Dravo's motion for summary judgment. Schindler then filed a timely notice of appeal.

## II

The Jones Act gives "[a] seaman injured in the course of employment" a cause of action for his employer's negligence. 46 U.S.C. § 30104; *see also Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). Proving negligence in a toxic-tort case requires evidence of two types of causation: "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). The Jones Act reduces the degree of proof required to show these two types of causation to a "very light" or "featherweight" standard. *In re Cooper/T. Smith*, 929 F.2d 1073, 1076 (5th Cir. 1991).

Because the district court's summary judgment ruling stemmed from its evidentiary rulings, we must first address whether the district court erred in excluding Harrison and Tarin's specific-causation testimony. We review the exclusion of expert testimony for abuse of discretion. *Muñoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000).[1] We then review de novo whether the specific-

---

[1] Schindler argues that neither the Supreme Court nor this court have addressed whether the exclusion of expert testimony should be reviewed de novo when the exclusion results in entry of summary judgment against the plaintiff. This is clearly wrong. The Supreme Court rejected this very argument in *General Electric Co. v. Joiner*, 522 U.S. 136, 142–43 (1997).

causation evidence properly before the district court was sufficient to defeat Dravo's motion for summary judgment. *See id.*

## III

A qualified expert witness may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The district court plays an important gatekeeping role by verifying that expert testimony meets this threshold standard of reliability before the jury hears it. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

Schindler argues that the lower threshold for proving causation in a Jones Act case also lowers the "reliability" bar for admitting expert testimony to prove causation. If he is correct, then the district court abused its discretion in applying the ordinary Rule 702 standard. *See Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) ("A trial court abuses its discretion when its ruling is based on an erroneous view of the law . . . ."). But Schindler is wrong. As this court has explained, "[t]he standards of reliability and credibility to determine the admissibility of expert testimony under *Daubert* and Rule 702 apply regardless [of] whether a seaman's burden on proximate causation is reduced." *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 728 n.41 (5th Cir. 2009) (unpublished).[2] The question, then, is whether the district

---

[2] While *Seaman* is not binding, the clear weight of authority on this point convinces us that *Seaman* was correct. *See Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994) ("The standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another."); *Taylor v. Consol. Rail Corp.*, 114 F.3d 1189, 1997 WL 321142 at *6–7 (6th Cir.

court's application of the correct Rule 702 standard involved "a clearly erroneous assessment of the evidence." *Bocanegra*, 320 F.3d at 584.

## A

We first address Harrison's specific-causation testimony. At his deposition, Harrison offered his opinion that "Mr. Schindler's six-week exposure aboard the Avocet is a contributing factor . . . to his cumulative asbestos fiber exposure, and therefore contributed to his risk of developing mesothelioma." The district court did not abuse its discretion in concluding that this opinion was not supported by sufficient facts or data.

Harrison's only evidence that Schindler was even exposed to asbestos on the Avocet came from one of Schindler's interrogatory responses from a different case in California and a discussion with Schindler whose contents are not in the record. And when Schindler's interrogatory response stated that insulation around pipes in the Avocet's engine room contained asbestos, Harrison admitted that he simply assumed Schindler was correct. Harrison never reviewed any of Schindler's deposition testimony from this case—where Schindler conceded that he had no specific recollection of even seeing insulation on the Avocet. In short, Harrison's opinion—proffered as proof that asbestos on the Avocet contributed to Schindler's cancer—rested on the *assumption* that Schindler was even exposed to asbestos on the Avocet.

Harrison's testimony is much like the excluded testimony in *Seaman*. *See* 326 F. App'x at 725–28. The district court there did not permit a doctor to testify that Seaman's cancer was likely caused by chemical exposure on the defendant's vessels because the doctor's "assumption of regular exposure without any 'facts upon which [the doctor] could have possibly surmised

1997) (unpublished table decision) (following *Claar*); *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 74 (2d Cir. 2004) (following *Claar* and *Taylor*); *see also Knight*, 482 F.3d at 352–55 (applying ordinary *Daubert* standard to causation testimony in a Jones Act case).

exposure levels, rendered her causation opinion mere guesswork.'" *Id.* at 726. As in *Seaman*, we hold that the district court here acted within its discretion in concluding that such a significant assumption rendered the expert's testimony unreliable.

**B**

Our analysis of Tarin's testimony is much the same. Like Harrison, Tarin never reviewed the depositions from this case and did not know that Schindler admitted to not having any specific recollection of seeing insulation on the Avocet. Tarin's expert report said nothing about Schindler's time on the dredge at all.

Tarin's deposition makes it even clearer that his specific-causation opinion rested on an assumption—rather than evidence—that Schindler was exposed to asbestos on the Avocet. Schindler's counsel asked: "If Mr. Schindler alleges that he was exposed to asbestos in 1973 on a dredge called the Avocet while working in Lake Pontchartrain, would that exposure to asbestos have caused or contributed to his mesothelioma?" Tarin responded: "The probability is high that that exposure *would have* contributed, yes." (Emphasis added.) Excluding Tarin's specific-causation testimony based on an assumption of this central fact was not an abuse of discretion. *See Seaman*, F. App'x at 726.

**IV**

We next review the district court's entry of summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although in Jones Act cases a 'jury is entitled to make permissible inferences from unexplained events,' summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case." *In re Cooper/T. Smith*,

929 F.2d at 1077 (quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)).[3]

With Harrison and Tarin's testimony properly excluded, the record contains no admissible expert testimony to prove that asbestos on the Avocet was a contributing cause to Schindler's cancer. And this court has held that toxic-tort cases—even under the Jones Act—require expert testimony to prove causation. *See Seaman*, 326 F. App'x at 723–24. Schindler apparently agreed with this when he argued to the district court that his case should survive summary judgment *if* either Harrison or Tarin's specific-causation testimony was admitted. But he now reverses course, arguing to us that the Jones Act permits him to prove specific causation even without expert testimony. We will not consider an argument on appeal that contradicts Schindler's position in the district court.

Schindler also argues that summary judgment was inappropriate because Dravo should be equitably estopped from denying that asbestos exposure on the Avocet was one cause of Schindler's cancer. Schindler points to a federal regulation issued in 1972 that required employers to monitor their employees' exposure to asbestos in "every place of employment where asbestos fibers are released." 29 C.F.R. § 1910.93a(f)(1) (1973). Because Dravo has no records of this monitoring, Schindler argues that Dravo must have failed to do it, and thus should not benefit from the lack of evidence created by its own failure.

This argument fails for at least two reasons. First, if Dravo did any asbestos-exposure monitoring in 1973, it only had to keep the associated records until 1976. *See id.* § 1910.93a(h)(2)(i) ("Records shall be maintained for

---

[3] Schindler argues that summary judgment was inappropriate because a jury trial is "part of the remedy" in a Jones Act case. If he means that Rule 56 is inapplicable to Jones Act cases, he is clearly wrong.

a period of at least 3 years . . . .”). The current absence of records, then, tells us nothing about whether Dravo failed to conduct any monitoring this regulation may have required. Second, the regulation wouldn't require Dravo to monitor asbestos-exposure levels on the Avocet *unless* the Avocet was a place "where asbestos fibers [were] released." *Id.* § 1910.93a(f)(1). And that's the very fact Dravo contests.[4]

Accordingly, we AFFIRM the district court's judgment. Schindler's motion to expedite the appeal is DENIED as moot.

---

[4] Schindler's brief discusses an additional regulation that he never raised in the district court. We will not address it for the first time on appeal.