# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2024

Lyle W. Cayce
Clerk

————————

No. 23-30460

————————

Harry F. Marsh; Cynthia Joy Marsh, Surviving heir of
Harry F. Marsh,

*Plaintiffs—Appellants*,

*versus*

Chas Kurz & Company, Incorporated; Chiquita Brands
International, Incorporated, *individually and* as *successor in
interest to* United Fruit Company; Farrell Lines, *individually
and* as *successor in interest to* American Export Lines,
Incorporated; National Bulk Carriers, Incorporated,

*Defendants—Appellees*,

——————————————————————

Cynthia Marsh, as Administrator for the Estate of
Harry F. Marsh

*Plaintiff—Appellant*,

*versus*

Chas Kurz & Company, Incorporated; Chiquita Brands
International, Incorporated, *individually and* as *successor in
interest to* United Fruit Company; Farrell Lines, *individually
and* as *successor in interest to* American Export Lines,
Incorporated; National Bulk Carriers, Incorporated,

*Third Party Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-9339, 2:21-CV-2185

———————————————————————

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

After contracting mesothelioma, retired merchant mariner Harry Marsh sued the owner of every vessel he had worked on over a lengthy career—including appellees Chas Kurz & Co., Inc., Chiquita Brands International, Inc., Farrell Lines, individually and as successor in interest to American Export Lines, Inc., and National Bulk Carriers, Inc. Marsh alleged his illness was caused by asbestos on their vessels. Appellees moved to exclude Marsh's expert reports and for summary judgment, arguing there was no evidence that they had exposed Marsh to asbestos. The district court granted both motions. We affirm.

I.

Marsh sailed as a merchant mariner from 1944 to 1992. During his lengthy career, he worked in various roles on many different vessels. Those vessels, in turn, belonged to many different owners, including appellees. In 2018, decades after he retired, Marsh was diagnosed with mesothelioma. Marsh sued the owners of all the vessels he had worked on (as well as other related parties) under the Jones Act, claiming each had caused his illness by exposing him to asbestos. In total, Marsh sued around 60 different entities. Sadly, Marsh died in 2019 at the age of 92. But his lawsuit continued, with his heir and estate taking over.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30460

Many defendants settled. Among them was Lykes Bros. Steamship Co., Inc., the shipping company Marsh had worked for continuously from 1960 to 1992—most of his career. In contrast, Marsh had worked relatively little for appellees. His employment with them was confined to the 1940s and 1950s, totaling only several hundred days combined. Nonetheless, appellants' experts concluded that exposure to asbestos on appellees' vessels contributed to Marsh's developing mesothelioma.

Appellees moved to exclude those expert reports and for summary judgment. They argued that no evidence showed Marsh was exposed to asbestos aboard their vessels and, given that lack of evidence, the experts' conclusions were unsupported. The district court evidently agreed, granting both motions.[1] This appeal followed.

## II.

We review the exclusion of expert testimony for abuse of discretion. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). We review a summary judgment *de novo*. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019); *see* Fed. R. Civ. P. 56(a).

## III.

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 30104). Although the Jones Act reduces the burden to prove a toxic substance caused a seaman's illness,

---

[1] The district court did not explain why it granted the motions but stated it would supply reasons later. To date, it has not done so. While district courts should provide their reasons for granting or denying summary judgment, *see* Fed. R. Civ. P. 56(a), failure to do so is not necessarily grounds for reversal "if we can ourselves determine whether summary judgment [wa]s appropriate." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 273 (5th Cir. 2020).

"summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). If a seaman cannot show he was exposed to a substance aboard a vessel, by definition he cannot show it caused his illness. *See, e.g.*, *Schindler v. Dravo Basic Materials Co., Inc.*, 790 F. App'x 621, 625 (5th Cir. 2019).

Appellants failed to make that threshold showing. They point to no evidence showing that Marsh was exposed to asbestos aboard appellees' vessels. Indeed, in a deposition taken before he died, Marsh admitted he had no memory of working on those vessels or of anything happening onboard that would have exposed him to asbestos. Further, he admitted that he did not know whether asbestos was even present in the areas where he had worked. He only "assum[ed]" it "probably" was. This assumption, he explained, was based on asbestos's widespread use on ships in that period.

The only other evidence of exposure appellants point to are various government documents suggesting the general presence of asbestos aboard vessels at the time. Those documents themselves illustrate the weakness of appellants' position. For instance, one Coast Guard circular from 1980 (long after Marsh's service aboard appellees' vessels had ended) states that "[a]ll vessels have some asbestos insulation material on board." Appellants seize on this statement. But the circular's next sentence explains that "the amount and type of asbestos can vary from very little to significant amounts." So, the circular suggests nothing about Marsh's risk of asbestos exposure aboard any particular vessel. Appellants point to no evidence *specific to appellees' vessels*, such as inspection reports, construction or maintenance documents, or testimony from other seaman who worked onboard.

Given the dearth of evidence specific to the appellees' vessels, no "fair-minded" reasonable jury could conclude that Marsh was exposed to

asbestos on them. *Bartel v. A-C Prod. Liab. Tr.*, No. 2:10-37528-ER, 2014 WL 8392369, at *1 n.1 (E.D. Pa. Sept. 3, 2014) (quoting *Rogers v. Mo. Pac. R. Co.*, 352 U.S. 500, 510 (1957)). Appellants were required to prove more than that many merchant mariners on many ships were exposed to asbestos during the years Marsh sailed. *Ibid.* Rather, they had to prove that Marsh himself was exposed to asbestos on appellees' vessels during specific periods of employment. *See ibid.* They lack the evidence of that. *See ibid*; *Schindler*, 790 F. App'x at 625; *Jackson v. A-C Prod. Liab. Tr.*, 622 F. Supp. 2d 641, 644 (N.D. Ohio 2009) (citing *Stark v. Armstrong World Indus.*, 21 F. App'x 371, 376 (6th Cir. 2001)).

Accordingly, the district court did not abuse its discretion by excluding appellants' expert reports. A "[p]laintiff cannot shore up inadequate exposure evidence with unsupported expert testimony." *Jackson*, 622 F. Supp. 2d at 647. *See also Schindler*, 790 F. App'x at 625. The experts' conclusions were predicated entirely on the general use of asbestos aboard ships at the time and on Marsh's corresponding assumption that he was "probably" exposed to asbestos while working for appellees. "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight*, 482 F.3d at 354 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and FED. R. EVID. 702). The district court did not abuse that discretion by excluding reports that were not supported by evidence of exposure aboard appellees' vessels. *See Schindler*, 790 F. App'x at 625 (concluding same in similar Jones Act asbestos case).

For similar reasons, the district court did not err by granting summary judgment for appellees. With no evidence of asbestos exposure aboard appellees' vessels and their expert reports on causation excluded, appellants could not establish the elements of their claim. *See In re Cooper/T. Smith*, 929 F.2d at 1077; *Schindler*, 790 F. App'x at 625 (explaining that we have "held

No. 23-30460

that toxic-tort cases—even under the Jones Act—require expert testimony to prove causation").

AFFIRMED.