Lance D. THOMAS, Jr.,
Plaintiff-Appellant,

v.

EXPRESS BOAT COMPANY, INC.
Cheramie Botruc No. 16, Inc.,
Defendants-Third-Party Plaintiffs-Appellees,

v.

PENROD DRILLING COMPANY,
Third-Party Defendant-Appellant.

No. 84–3110
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 2, 1985.

Simon, Peragine, Smith & Redfearn, Daniel J. Caruso, Kenneth R. Bowen, New Orleans, La., for appellants.

Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, Glenn B. Adams, New Orleans, La., for defendants-third-party plaintiffs-appellees.

Before GEE, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge.

Lance D. Thomas and Penrod Drilling Company appeal from the judgment in this admiralty case in which Thomas sought compensation for an injury to his right hand which resulted in the subsequent amputation of his hand. The jury found Express Boat, Thomas' employer, liable to Thomas for $370,000 as a result of its negligence which proximately caused the injury. On appeal, Thomas asserts that this award is insufficient. Express Boat brought a third-party claim against Penrod, seeking contribution. That claim was tried to the court, and the district court allocated one-third of the responsibility for the accident to Penrod. On appeal, Penrod asserts that the evidence is insufficient to support the district court's conclusion that Penrod was negligent and that it was one-third responsible for Thomas' injury. This Court concludes (1) that the evidence is sufficient to support the finding of liability against Penrod, and (2) that the jury's award of $370,000 is not insufficient. Consequently, the judgment of the district court is affirmed.

## I. BACKGROUND

### A. *Facts*

At the time of the accident, Thomas was employed by Express Boat Company, Inc., (Express Boat) as an engineer aboard the supply vessel CHERAMIE BO–TRUC NO. 16, (BOTRUC 16), which was owned by Cheramie Botruc 16, Inc., and operated by Express Boat. Thomas was injured while the BOTRUC 16 was being secured to The Penrod 82, an offshore drilling rig in the Gulf of Mexico, which was owned and operated by Penrod Drilling Company (Penrod). Thomas' injury resulted when Thomas' hand got caught and crushed in the mooring line.

The BOTRUC 16 had proceeded to the Penrod 82 that night to deliver urgently needed supplies. The BOTRUC 16 arrived at the Penrod 82 shortly after midnight on November 10, 1979. Captain Peterson, the master of the BOTRUC 16, did not want to tie up to the rig due to the darkness and the sea conditions, which included six to eight foot waves, a strong current, and winds of twenty knots. Captain Peterson would have anchored nearby until weather conditions improved. However, personnel on the Penrod 82 vigorously insisted that Captain Peterson at least unload a single tool which they needed, a Schlumberger tool which was packaged in its own sling.

Captain Peterson ordered his crew, including Thomas, to secure the BOTRUC 16 to the Penrod 82 using a mooring line provided by the Penrod 82. Captain Peterson maneuvered the BOTRUC 16 during the docking operations while Thomas and two other crew members performed deck docking duties. The weather was deteriorating, and due to the sea conditions and the placement of the anchor, Captain Peterson had difficulty backing and maneuvering the BOTRUC 16 to the rig in order to receive the mooring line from the rig. Nevertheless, the vessel did successfully tie up to the rig.

After the initial securing of the line, the personnel aboard the Penrod 82 observed a worn spot in the line about six feet from the BOTRUC 16. The rig personnel insisted that Captain Peterson bring the worn spot in the mooring line onto the BOTRUC 16 before they would participate in unloading the tool. Captain Peterson then ordered Thomas and the other two crew members to bring the worn spot onto the vessel by working the line around the bitt and through the knot while Peterson maneuvered the BOTRUC 16 in reverse to attempt to put slack into the line. It was Thomas' job to work the line through the knot while the other two crew members pulled in the slack.

Even though the other two crew members were able to pull slack onto the boat, Thomas was unable to pull the slack through the knot due to the fact that the knot at the point where it binds down on itself had welded (stuck) together. At the instant Thomas was able to pull the rope apart at the weld, the BOTRUC 16 unexpectedly fell off a ground swell causing the slack to go instantaneously out of the line. Thomas' right hand was pulled into the knot, and his hand was severely injured. The worn portion of the line was eventually pulled onto the BOTRUC 16 by the other two crew members. During that time, the line held fast despite the fray. Thomas' hand was subsequently amputated as a result of his injury.

### B. *Procedural History*

Thomas sued Express Boat Co., the BOTRUC 16, and Penrod Drilling Company. Prior to trial, Thomas settled his claim against Penrod. Thomas' claims against Express Boat and the BOTRUC 16 were then tried to a jury. Express Boat and the BOTRUC 16 asserted a third-party claim against Penrod for contribution. The district court severed the third-party claim from the jury trial portion of the case, and that claim was tried to the court. As part of the compromise between Thomas and Penrod, Thomas assumed Penrod's defense. The case was tried, and the jury returned a verdict in favor of Thomas and against Express Boat. The jury found that Express Boat was negligent, but that the

BOTRUC 16 was not unseaworthy. The jury returned a verdict specifying a lump sum award of $370,000.

The district court separately decided the third party claim, concluding that Penrod was negligent and allocating one-third of the responsibility for the accident to Penrod. That finding had the effect of reducing Thomas' award by one-third. In its conclusions of law, the district court held that Penrod was negligent because it provided a frayed mooring line to the BOTRUC 16. The district court found that the line was weakened by the fray, even though the line was three-strand nylon line. Although the court concluded that the fray was not readily observable to the crew of the BOTRUC 16 because it was nighttime and the sea was heavy, the court also concluded that the hazard was obvious to the crew of the Penrod 82. The court concluded that the frayed line coupled with Penrod's crew's insistance that the vessel dock, posed an unreasonable risk of harm to the crew of the BOTRUC 16, and that presenting the line to the crew of the BOTRUC 16 was negligence. The district court also found that Penrod's negligence was a substantial factor in causing Thomas' injury. The district court apportioned fault as follows: one-third to Penrod; two-thirds to Express Boat.

Penrod appeals the conclusions of the district court that it was negligent and that its negligence was a cause of the accident, arguing that the evidence does not support the district court's conclusions. Thomas also appeals, arguing that the jury's award was insufficient. For the reasons stated below, the judgment of the district court is affirmed.

## II. DISCUSSION

### A. *Sufficiency of the Evidence Against Penrod*

■ Thomas and Penrod challenge the district court's findings that Penrod was negligent and that its negligence was a legal cause of Thomas' injuries. The "clearly erroneous" standard of Fed.R. Civ.P. 52(a) applies to both of these findings. *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir.1984); *Allied Chemical Corp. v. Hess Tankship Co.*, 661 F.2d 1044, 1050 (5th Cir.1981). The clearly erroneous standard also applies to the district court's apportionment of the blame, which this Court will not overturn if it appears "at least roughly correct." *Flowers Transportation, Inc. v. M/V PEANUT HOLLINGER*, 664 F.2d 112, 114 (5th Cir.1981); *see Allied Chemical*, 661 F.2d at 1057; *Valley Towing Service, Inc. v. S/S AMERICAN WHEAT*, 618 F.2d 341, 346 (5th Cir.1980).

■ Appellants rely heavily upon the expert testimony of Captain Kleinpeter, which appellants claim to have been uncontradicted, for the proposition that presenting the frayed line was not negligence. Kleinpeter testified that nylon line such as that provided by Penrod is the best type of line available. He added that a nylon line with one of its three strands broken would still be more secure than a hemp line. In his opinion, the fraying did not "pose a big problem," and once the line had held for a few minutes it was unlikely to break. Kleinpeter also testified that Captain Peterson erred by using a "quick-tie" knot because, although such a knot is easy to tie, it is difficult to untie and thus is unsafe in heavy seas.[1]

Nevertheless, the district court did not clearly err when it found that Penrod was negligent. Captain Peterson testified that a fray weakens a line and that a broken nylon line "[a]cts like a rubber band" and is a severe hazard.[2] Captain Kleinpeter testified that he would not tie up with a line that was frayed one-third of the way through as was Penrod's line.[3] Furthermore, because of the sea conditions, the BOTRUC 16's crew could not tell for certain what shape the line was in; they

1. Record Vol. 5 at 8, 15–18, 31–32, 38–39.

2. Record Vol. 5 at 75.

3. Record Vol. 5 at 22, 24–25.

thought it might be frayed halfway through.[4] Although they were hesitant to bring in the fray, "there were eight to 12 people on the hand railing [of the rig], hollering, pointing, and just carrying on, making a ruckus." In fact, Peterson added that rig personnel would not come down to the BOTRUC 16 to lift the tool off the vessel until the BOTRUC 16 pulled in the line.[5] The district court justifiably relied upon these factors in properly finding that Penrod was negligent.

■ The court also did not clearly err in finding that Penrod's negligence proximately caused Thomas' injury. Proximate or legal cause is something more than "but for" causation, and the negligence must be a "substantial factor" in the injury. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir.1975); *see Chisholm v. Sabine Towing & Transportation Co.*, 679 F.2d 60, 63 (5th Cir.1982); *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978). The danger in sending a frayed line to a vessel in such poor weather was certainly foreseeable. Although Peterson also may have been negligent in deciding to bring in the line, this does excuse Penrod's negligence. *See Allied Chemical*, 661 F.2d at 1060.

Appellants present various arguments in their brief, all of which this Court finds unavailing. They argue that the evidence failed to demonstrate that Penrod was, or should have been aware of the fray. The district court properly could have concluded, however, that Penrod personnel were or should have been aware of the frayed line. Rig personnel did in fact first spot the fray after the BOTRUC 16 docked. Appellants also argue that the decision to bring in the line was Peterson's and Penrod is not responsible for his incorrect choice. Nevertheless, because Penrod's negligence made that decision necessary, the district court properly concluded that Penrod bears some responsibility for the accident. *See Allied Chemical*, 661 F.2d at 1060. This Court finds no error in the district court's conclu-

sion that Penrod's negligence proximately caused Thomas' injury.

**B.** *The Sufficiency of the Damage Award*

Thomas challenges the jury's damage award. Thomas argues that the jury could not properly have awarded him less than $365,747.39 for his financial losses. Thomas asserts that the $365,747.39 figure comprises $39,244.17 for past lost wages; $281,503.22 for future lost wages; $5,000 for future psychotherapy; and $40,000 for future rehabilitation. Thomas urges that the total jury award of $370,000 minus his financial losses leaves less than $5,000 for pain, suffering and humiliation. That amount, Thomas contends, is grossly inadequate compensation for the injury he suffered, the extensive medical treatment he underwent, and the eventual loss of his hand.

In *Hawkes v. Ayers*, 537 F.2d 836 (5th Cir.1976), this Court stated, "The function of reviewing courts with respect to damages awards ... is limited to resolving the question whether the trier of fact abused its discretion." *Id.* at 837. This Court will affirm an award if "there was any competent and substantial evidence in the record which fairly tends to support the verdict," *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1168 (5th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983), or unless the award is "contrary to all reason" and "evidences prejudice or speculation rather than a reasonable view of the evidence." *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1006 (5th Cir.1982).

■ Even assuming solely for the sake of argument that an award of less than $5,000 for pain and suffering would have constituted an abuse of the jury's discretion, the jury could properly have awarded substantially less than the $365,747.39 asserted by Thomas as compensation for Thomas' financial losses. For instance, Dr.

---

**4.** Record Vol. 5 at 65.

**5.** Record Vol. 5 at 63, 65–67.

Seymour Goodman, Thomas' economist, based his estimate of Thomas' lost future wages on the payroll records for Thomas' last eleven months of employment, a time during which Thomas worked a regular five-day week.[6] Captain Peterson testified, however, that about thirty days after the accident the boat's crew began working fourteen days on and fourteen off, and that most boats worked either fourteen and fourteen or seven and seven.[7] Goodman also acknowledged the possibility of pay cuts due to hard times in the industry, a possibility he did not take into account in his calculations.[8] Given this testimony, the jury could properly have found that Goodman's projection of Thomas' future income was overly optimistic. Because the jury could properly have awarded Thomas substantially less than $365,747.39 for financial losses, it cannot be said that the award for pain and suffering was in fact less than $5,000 or that the total award of $370,000 was an abuse of the jury's discretion.

### III. CONCLUSION

This Court concludes that the evidence is sufficient to support the district court's finding that Penrod was negligent and that its negligence was a proximate cause of Thomas' injury. This Court also concludes that the total award of $370,000 was not insufficient. Consequently, the judgment of the district court is

AFFIRMED.