IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40810
_____


MARK J. DESLATTE,

Plaintiff-Appellee,

versus

TIDEX, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Louisiana
(93-CV-546)
_____
March 18, 1996


ON PETITION FOR REHEARING

Before GARWOOD, JOLLY, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]


On petition for rehearing, Tidex takes the panel to task for
deciding the case on a basis different from the rationale and the
specific findings of the district court. Notwithstanding the
petitioner's protestations, however, and to the extent that his

---

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

point has support, appellate courts may comprehensively canvas the record and are free to affirm a district court on any basis that the record supports. Ferguson v. Hill, 846 F.2d 20, 21 (5th Cir. 1988); Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1044 (5th Cir), cert. denied, 484 U.S. 924, 108 S.Ct. 286 (1987). In comparing the district court's formal findings with other information in the record, we can also make assumptions regarding what the district court properly could have concluded in reaching its decision. Ferguson, 846 F.2d at 21; Thomas v. Express Boat Co., Inc., 759 F.2d 444, 448 (5th Cir. 1985).

Tidex further argues in its petition for rehearing that we engaged in factfinding, which, of course, an appellate court is not permitted to do. Although we did not engage in factfinding, the petitioner has pointed out that in certain instances we failed to state with accuracy the precise record facts. We regret each error. Nevertheless, each error ultimately is inconsequential to our finding that, on this record, the district court's findings of liability and damages are supportable and must be affirmed. In order to correct any mistakes in our reading of the record as reflected in our earlier opinion, the panel withdraws the opinion that was filed in this appeal on June 23, 1995, and substitutes the following. In all other respects, the petition for rehearing is denied.

Tidex, Inc. ("Tidex") appeals the district court's entry of judgment against it on Mark Deslatte's ("Deslatte") claims of negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under general maritime law, the district court's apportionment of damages, and the district court's denial of its motion for a new trial. We carefully have reviewed the record and the briefs in this case and conclude that the judgment of the district court must be affirmed in all respects, save its award for "found" damages.

II

Because an explanation of the facts will facilitate a better understanding of this case, we present them in detail.

Deslatte was injured during a mooring operation on December 15, 1990, while he was working for Tidex on its supply vessel, the M/V O'NEIL TIDE. Deslatte, age twenty-six at the time, was serving as the chief engineer on the vessel and had been working for Tidex almost four years when the accident occurred.

The accident occurred when the O'NEIL TIDE was delivering supplies to a drilling rig in the Gulf of Mexico. The supply vessel's captain, Ernest LeBouef, had never been to this drilling rig. Because the currents were strong that day, Captain LeBouef decided to tie the O'NEIL TIDE's bow to a mooring buoy, which was

approximately one-fourth mile from the drilling platform, and back the stern of the supply vessel to the rig. Once on location, the drilling rig was to lower mooring lines to be secured to the vessel's stern bitts.

Before commencing the operation, the captain met with Deslatte and part of the crew to discuss the method of securing the vessel to the buoy. Captain LeBouef ordered Deslatte to man the bow line and three other crew members to handle the stern lines, while the captain would attempt to execute the backdown maneuver using the stern controls of the vessel. Positioned at the stern controls, the captain would have no means of seeing Deslatte or of communicating with him during the procedure. The one remaining crew member was permitted to sleep through the procedure.

Captain LeBouef decided to use a bridle setup to secure the O'NEIL TIDE to the anchor buoy because it provided more stability than the alternative single line setup. Under the bridle setup, one end of the line is tied to the portside bitt on the bow. The other end is then placed through a shackle attached to the anchor buoy line and then tied to the starboard side bitt on the bow. With only 300 feet of bow line available, the use of this method effectively reduced the available bow line by one-half. Captain LeBouef chose this procedure even though he was uncertain of the length of the buoy line.

Deslatte's job was to monitor the bow line at the starboard side bitt as the vessel backed toward the rig. When more line was needed, Deslatte was to take a wrap off the bitt. If the line began to surge, Deslatte was to put the wrap back on the bitt. If the line began to surge uncontrollably, the captain instructed Deslatte to drop the rope and try to get away.

As the operation proceeded, Deslatte paid out the bow line on two different occasions, without incident. The operation proceeded uneventfully until the vessel moved into position to receive the mooring lines from the rig. When the vessel reached the rig, Deslatte decided to let out the line a third time, without looking to see whether enough rope remained on deck. As he was doing this, the line surged suddenly and uncontrollably through his hands. Deslatte dropped the line and attempted to step back, but as the line surged, the end of it whipped around the bitt and struck his right leg just below the knee. Deslatte sustained a fractured leg and severe damage to his right knee. Deslatte admitted that had he checked, he would have seen that the end of the line was at his feet, and he would not have let out more line. Despite three surgical procedures, including reconstructive surgery, the injury to his right knee remains disabling.

III

Deslatte brought a seaman's action for damages against his employer, Tidex, under the Jones Act, 46 U.S.C. § 688, and general maritime law. Following a two-day bench trial, during which the parties presented neither expert witnesses nor evidence of industry standards, the court found the defendant negligent and its vessel unseaworthy. The judge predicated a finding of negligence on the captain's failure to insure proper communication and visual contact with crew members, and found that the accident might have been avoided had the defendant awakened a sleeping crew member to serve as lookout for Deslatte. The court further found inadequate communication between the stern controls and the bow, thus, constituting an unseaworthy condition that caused Deslatte's injuries. From the facts presented, the judge found that Deslatte was 15% contributorily negligent. The court awarded Deslatte $100,000 in general damages and $270,083.42 for economic losses, subject to a reduction for his contributory negligence.

Tidex filed a motion for a new trial, which the district court denied without a hearing. Tidex timely filed its appeal. The defendant asks this court to reverse the district court's judgment, or, in the alternative, to remand for further articulation of the legal and factual basis for apportionment of fault. The defendant also requests a modification of the found award.

IV

Tidex presents several arguments on appeal. The company first argues that the trial judge erred by imposing liability on it for the claims of negligence and unseaworthiness because there was insufficient evidence on which to base this determination. In the alternative, Tidex argues that the trial court's findings on Deslatte's contributory negligence are insufficient to permit meaningful review, thus, requiring the case to be remanded for further findings. Finally, Tidex argues that the trial court erroneously calculated the damage award by giving Deslatte double recovery in the form of damages for both maintenance and found.[1] We now direct our attention to these issues, and hold that the district court's judgment should be affirmed, with the exception of the award for found.

Very important to the conclusion we reach today is the standard of review under which this case is judged. We review a trial judge's findings of fact under the clearly erroneous standard, whereas we review his conclusions of law de novo. Brister v. A.W.I., Inc., 946 F.2d 350, 354 (5th Cir. 1991). Under the Jones Act, the defendant "'must bear the responsibility for any negligence, however slight, that played a part in producing'" Deslatte's injury. Zapata Haynie Corp. v. Arthur, 980 F.2d 287,

---

[1]Found refers to damages awarded as recovery for offshore living expenses, including lost offshore meals.

289 (5th Cir. 1992), <u>cert. denied</u>, 113 S.Ct. 2999 (1993)(quoting <u>In re Cooper/T. Smith</u>, 929 F.2d 1073, 1076-77 (5th Cir.), <u>cert. denied</u>, 112 S.Ct. 190 (1991)).  Indeed, under the Jones Act, the burden of proving causation between the negligent conduct and the injury is "featherweight."  <u>Id.</u>

We must keep in mind, furthermore, that in admiralty cases questions of negligence are considered as factual issues and, therefore, are examined under the clearly erroneous standard. <u>Zapata Haynie</u>, 980 F.2d at 289.  As we have stated,

> [a] factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  If the district court's account of the evidence is plausible in light of <u>the record viewed in its entirety</u>, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

<u>Id.</u> (citations omitted)(quotations omitted)(emphasis added).  The clearly erroneous standard also applies to the district court's apportionment of the blame, which this court will not overturn if it appears at least roughly correct.  <u>Thomas</u>, 759 F.2d at 447; <u>Flowers Transp., Inc. v. M/V PEANUT HOLLINGER</u>, 664 F.2d 112, 114 (5th Cir. 1981).  With these standards in mind, we turn to the

evidence to determine whether the record, viewed in its entirety, supports Deslatte's Jones Act claim.[2]

After a thorough review of the record in its entirety, we cannot say that the district court was clearly erroneous in its determination that Tidex was liable for Deslatte's injuries under the Jones Act. The record that supports the district court's finding of liability under the Jones Act includes the following circumstances and evidence. This was Captain LeBouef's first time to unload at this drilling rig, and he did not know the length of the buoy line. The captain testified at trial that, nonetheless, he had knowledge that this particular buoy line was shorter than normal. Yet, the captain used a bow line, 300 feet in length, with a bridle configuration that effectively halved the length of the line. Admitting his ignorance of the length of the buoy line, the captain testified that he did not really know whether there was enough line to use the bridle setup and whether it would suffice to reach the rig. The captain further testified that he knew that there was a chance that they might run out of line before reaching the rig and that the line, under pressure, might shoot out rapidly from the side of the vessel. He admitted never discussing this danger with Deslatte.

---

[2]Because of our disposition of Deslatte's Jones Act claim, there is no need for us to reach his unseaworthiness arguments under general maritime law.

In comparing the district court's finding of liability with the record as a whole, the record clearly supports a conclusion that the danger facing Deslatte under these circumstances was foreseeable to the captain. As chief engineer, Deslatte's primary responsibility aboard the vessel was to maintain the efficient working condition of the machinery and engineering plant, although he assisted sometimes with mooring duties. The captain testified at trial that he knew that most of Deslatte's experience had been as an oiler or an engineer and that he did not know whether Deslatte had ever paid out a line under pressure. Regarding his difficulty with paying out the line, Deslatte testified that, because of the tension in the rope and its unpredictability, it would have been dangerous to take his eyes off it to look at the remaining rope. Captain LeBouef's trial testimony indicates an awareness of this potential dilemma because the captain confirmed that, in mooring operations, a crew member is supposed to keep his eye on the rope as it is going around the bitt. From this evidence, coupled with the captain's failure to discuss potential dangers with Deslatte and his failure to ascertain the engineer's inexperience in paying out line, the factfinder could infer that Deslatte's inattention to the remaining rope and the resulting injury were reasonably foreseeable to the captain.

Notwithstanding these risks, the captain directed Deslatte to man the bow line and three other crew members to handle the stern lines, while he attempted to execute the backdown maneuver using the vessel's stern controls. The defendant permitted one crew member to sleep through this procedure. While at the stern controls, the captain had no means of seeing Deslatte or of communicating with him. Once the situation got out of hand, Deslatte's calls for help went unanswered simply because the captain could not see or hear him. The captain, in performing this task under procedures that he had established, had allowed himself to be so out-of-communication with a crucial operation on his vessel, that he was not aware of Deslatte's injuries until Deslatte managed to climb up to the wheelhouse and alert the captain. In short, the defendant was fully apprised of conditions that should have heightened its concerns for safety in this situation, yet the defendant took inadequate steps to establish a readily available means of communication for which there was an evident need. In other words, the record supports a finding of some negligence in executing the task of backing down to the drilling rig and this negligence has a causal connection to the accident that resulted in Deslatte's injuries.[3] For these reasons, we hold that the district

---

[3]Tidex suggests that the effect of our affirming the district court is to require two persons to perform the task at hand--one to perform the primary task and the second to serve as a lookout--when

court was not clearly erroneous in its ruling in favor of Deslatte, and its judgment of liability is affirmed.

With respect to the allocation of contributory negligence, Tidex challenges the sufficiency of the evidence to support the district court's finding of 15% negligence on the part of Deslatte. As explained above, we will not overturn the district court's apportionment of the blame so long as it appears at least roughly correct. <u>Thomas</u>, 759 F.2d at 447. Our review of the whole record leads us to conclude that sufficient evidence supports the district court's allocation of fault. We are guided in our conclusion by the clear law in this circuit that, although the seaman has a duty to use reasonable care, the duty to provide for a safe course of conduct lies primarily with the vessel owner. <u>E.g.</u>, <u>Ceja v. Mike Hooks, Inc.</u>, 690 F.2d 1191, 1193-94 (5th Cir. 1982). We note that the district court expressly considered Deslatte's degree of responsibility for his injuries and attempted to quantify Deslatte's fault based on the evidence presented at trial. In accord with our controlling standard of review, we find the allocation of fault by the district court adequately supported by the record evidence and thus not clearly erroneous.

there is neither testimony regarding industry standards nor expert testimony indicating that this job required more than one person. Our ruling today has no such effect because we are deciding this case and this case only. We are affirming on the totality of the conduct under the circumstances and not on any single failing of the defendant.

Consequently, the district court's judgment is AFFIRMED in all respects, save one. Tidex argues that the damages for found, or lost offshore meals, must be recalculated so that Deslatte is not awarded a double recovery. The record is unclear whether the district court's award for found was double recovery. Thus, we REMAND this issue to the district court to ensure that Deslatte has not been awarded both maintenance and found for the same time period.[4]

V

For the foregoing reasons, we hold that in the light of the totality of the circumstances, the district court's judgment finding Tidex 85% negligent and Deslatte 15% contributorily negligent is not clearly erroneous. We remand on the issue of the found award, however, so that the district court can ensure that Deslatte does not receive double recovery for lost offshore meals. The district court's judgment is therefore

AFFIRMED and REMANDED.[5]

---

[4]A recovery of "found" should preclude recovery of maintenance for the same period of time in a subsequent maintenance and cure action, and vice versa. See Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918, 920 (2d Cir. 1961); see also Richardson v. St. Charles-St. John the Baptist Bridge and Ferry Auth., 284 F.Supp. 709, 713 (E.D. La. 1968).

[5]No member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, (FRAP and Local Rule 35) the suggestion for rehearing en banc is also DENIED.